**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STANLEY J. HANCZYC, JR.

    Plaintiff,

       v.

VALLEY DISTRIBUTING AND STORAGE

COMPANY, INC., CONRAD

KOTLOWSKI, and CAROL KEUP,

    Defendants.

CIVIL ACTION NO. 3:CV-10-2397

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are the Motion for Summary Judgment filed by Defendants Carol Keup ("Keup"), Conrad Kotlowski "(Kotlowski"), and Valley Distributing and Storage Company, Inc. ("Valley") (collectively "Defendants") (Doc. 25) and the Cross-Motion for Partial Summary Judgment filed by Plaintiff Stanley J. Hanczyc ("Hanczyc"). (Doc. 33.)  Hanczyc claims that Valley violated his rights protected under various state and federal statutes, including the Americans with Disabilities Act, the Family Medical Leave Act, the Fair Labor Standards Act, the Pennsylvania Human Relations Act, and the Pennsylvania Minimum Wage Act during his employment with Valley.  Defendants have moved for summary judgment on all claims, and Plaintiff has filed a cross-motion for partial summary judgment.  Because genuine issues of material fact exist with respect to the Americans with Disabilities Act, the Family Medical Leave Act, and the Pennsylvania Human Relations Act claims, summary judgment will be denied as to these claims.  However, because the record demonstrates that Hanczyc was not compensated when he worked in excess of forty hours while he was a "non-exempt" Valley employee from December 2007 until November 2008, his motion for summary judgment as to liability on the Fair Labor Standards Act and Pennsylvania Minimum Wage Act claims will be granted.

**I. Background**[1]

Valley is a third-party logistics warehouse for other customers. (*Defs.' Statement Material Facts*, "*Defs.' SMF*", ¶ 1.)  Valley receives, picks orders, and ships orders for other customers. (*Id.*)  Valley has nine (9) warehouses between Wilkes-Barre, Scranton, and West Pittston. (*Id.* at ¶ 2.)

Hanczyc was hired by Valley in August 2006 as a Warehouse Manager in building number one. (*Id.* at ¶ 3.)  Hanczyc had a number of responsibilities as manager, including ensuring that orders were timely completed, that all inbound and outbound shipments were accurate, and that customers were satisfied with Valley's services. (*Id.* at ¶ 4.)

When Hanczyc was first hired by Valley, he reported directly to Keup and Kotlowski. (*Id.* at ¶ 8.)  During all relevant times to this action, Kotlowski was Valley's General Manager, Keup was Valley's Chief Operating Officer, and Karen Haller ("Haller") was Valley's Vice-President of Finance. (*Id.* at ¶¶ 9-10, 14.)  As General Manager, Kotlowski was responsible for overseeing the day-to-day functions of the warehouses. (*Id.* at ¶ 11.)  As such, Kotlowski supervised the building and warehouse managers. (*Id.* at ¶ 12.)

On October 31, 2007, Hanczyc had open heart surgery. (*Id.* at ¶ 21.)  Hanczyc was in the hospital for three days following his surgery. (*Id.*)  On November 31, 2007, Hanczyc's family doctor, Maer Biscotti, M.D., advised Plaintiff that he would be able to return to work on light duty on December 17, 2007 and to full duty on January 17, 2008. (*Hanczyc Dep.*, Ex. 1.)  Hanczyc returned to work at Valley on or about December 17, 2007. (*Defs.' SMF*, ¶ 22; *Pl.'s Counter-Statement of Facts*, "*Pl.'s CSF*", ¶ 22.)  Thereafter, during 2008, Hanczyc received multiple notes from his physician documenting his hour and lifting restrictions. (*Defs.' SMF*, ¶¶ 23-27.)  Hanczyc asserts that Defendants repeatedly instructed him to return to his physician to get documentation permitting an increase in his hours, and

---

[1]     The facts presented are undisputed unless otherwise noted.

Defendants also demanded a new physician's note every month. (*Hanczyc Dep.*, 69:22-70:12.)  While Plaintiff's physician wrote prescriptions to limit his daily and weekly working hours during 2008, Hanczyc regularly worked in excess of those hours. (*Defs.' SMF*, ¶¶ 24-27; *Pl.'s CSF*, ¶ 23.)  Although Defendants assert that Hanczyc was repeatedly counseled and issued disciplinary warnings for unilaterally failing to heed the work restrictions set by his physician, (*Defs.' SMF*, ¶¶ 34-36), Hanczyc contends that he never received any such disciplinary warnings and that Defendants repeatedly demanded that he work in excess of his hour restrictions. *(Pl.'s SMF*, ¶ 34.)

In September 2008, Hanczyc was involved in an altercation or conflict with another Valley employee. (*Defs.' SMF*, ¶ 33.) Plaintiff was suspended for one day as a result of this altercation, (*Hanczyc Dep.*, 96:7), while the other employee received a written warning for using "foul language which precipitated [the] confrontation." (Doc. 52.)  And, on October 27, 2008, Hanczyc had a meeting with Keup, Haller, and Lisa Natt to discuss Plaintiff's "repeat issues with management peers that resulted in complaints." (Doc. 54.)

When Valley first hired Hanczyc, he was a salaried employee. (*Defs.' SMF*, ¶ 38.) Eventually, however, Hanczyc became an hourly employee. (*Hanczyc Dep.*, 34:16-22; *Keup Dep.*, 20:4-6.)  Hanczyc asserts that he became an hourly employee in December 2007, (*Hanczyc Dep.*, 34:16-22), while Keup contends that Hanczyc remained a salaried employee until November 2008. (*Keup Dep.*, 22.) Valley's corporate designee testified that Hanczyc was a salaried employee before his surgery but after he returned from leave he was paid hourly. (*Haller Dep.*, 31:14-17.)  Valley also testified:

> **Question** [Plaintiff's Counsel]: But after his surgery, when he became an hourly employee, you testified that Valley paid him his hourly rate up to the 40th hour, but then did not pay for him for any hours worked over 40; is that correct?
>
> **Answer** [Karen Haller]: Correct.

(*Id*. at 31:24-32:5.)

On April 2, 2009, Keup forwarded a letter to various Valley employees, including Hanczyc, "to improve the overall efficiency of Building 1, your personal work performance, and your interaction with various other functions and colleagues of Valley Distributing." (*Hanczyc Dep.*, Ex. 6.)  In conjunction with this letter, Hanczyc met with Keup to discuss his work performance.  (*Defs.' SMF*, ¶ 45.)  And, on August 10, 2009, Plaintiff attended a meeting with Keup and Haller regarding his job performance. (*Id*. at ¶ 46.)  Hanczyc alleges that the meeting occurred as an attempt to persuade him to drop a pending charge he filed against Valley with the Equal Employment Opportunity Commission ("EEOC"). (*Pl.'s CSF*, ¶ 46.)  During the August 10, 2009 meeting, Hanczyc was told that he was responsible for losing important Valley customers. (*Id*. at ¶ 47.)

Ultimately, Hanczyc was terminated from his employment with Valley in August 2009 because of performance issues related to customer complaints, his customer service level, and his interactions with other Valley employees. (*Defs.' SMF*, ¶¶ 48-51.)  Hanczyc disputes these proffered reasons for his termination.  Instead, he contends that his work performance was exemplary during the course of his employment with Valley. (*Pl.'s*, ¶¶ 48-51.)

As a result of the foregoing events, Hanczyc commenced this action on November 18, 2010 alleging nine (9) different causes of action. (*Compl.*)  On May 9, 2011, Plaintiff's intentional infliction of emotional distress (Count VIII) and negligent infliction of emotional distress (Count IX) claims were dismissed. (Doc. 12.)  As such, the parties proceeded to discovery on the following claims: Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, failure to provide reasonable accommodation against Valley (Count I); ADA retaliation against Valley (Count II); Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951, *et seq.*, against all Defendants (Count III); Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, interference against all Defendants (Count IV); FMLA retaliation against all Defendants (Count V); Fair Labor Standards Acts ("FLSA"), 29 U.S.C.

§§ 201, *et seq.*, against all Defendants (Count VI); and Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. §§ 333.101, *et seq.*, against all Defendants (Count VII).

At the close of discovery, the parties filed the instant motions for summary judgment. Defendants seek summary judgment on all claims, while Plaintiff requests summary judgment as to Counts I, III, IV, VI, and VII.  As the motions have now been fully briefed, they are ripe for disposition.

## II. Discussion

### A.    Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment

as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed.R.Civ.P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477

U.S. at 249.

## B.    The ADA/PHRA Claims

The Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., seeks " to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA was passed pursuant to a number of congressional findings, including that " physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination," and that "discrimination against individuals with disabilities persists in such critical areas as employment, . . ." *Id*. at § 12101(a)(1), (3).  Hanczyc asserts that Valley discriminated against him in violation of the ADA by failing to provide a reasonable accommodation for his disability and by retaliating against him for exercising his rights under the ADA.[2]  These claims will be addressed in turn.

### 1.    Reasonable Accommodation

The ADA provides that: "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to

---

[2]      As "the PHRA and the ADA are 'basically the same . . . in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts,'" *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002), the PHRA claims will be treated as coextensive with the ADA claims.

perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Williams v. Phil. Hous. Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004) (internal citations omitted). "Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Stouch v. Twp. of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). "The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination." *Id*.

The ADA's definition of "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). A "major life activity" is defined to include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

The second element of a *prima facie* ADA claim is that the plaintiff is a "qualified individual." *Williams*, 380 F.3d at 768. A "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the ADA, a "reasonable accommodation" may include "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B).

To establish the final element of a *prima facie* ADA claim, the plaintiff must demonstrate that he suffered an adverse employment action. *See Williams*, 380 F.3d at 771. Adverse employment action includes the failure to make a reasonable accommodation. *See id*.

8

Both Valley and Hanczyc seek summary judgment on the ADA discrimination claim. Valley argues that "Hanczyc failed to participate in his own reasonable accommodation. His failure to participate does not raise an issue of material fact for a jury to consider." (Doc. 26, 15.)  Conversely, Plaintiff asserts that the request for a reasonable accommodation, simply a reduced work schedule, was refused by Defendants. (Doc. 63, 10.)[3]

Valley's motion for summary judgment and Hanczyc's cross-motion for summary judgment on the ADA discrimination claim will both be denied.  Valley argues that Hanczyc failed to engage in the interactive process regarding his request for reasonable accommodation because Plaintiff "caused a breakdown in the process" by not complying with his physician's restrictions. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312, 319-20 (3d Cir. 1999) (setting forth elements disabled employee must establish to demonstrate employer refused to participate in the interactive process).  In support of its position, Valley has presented evidence that Hanczyc was spoken with on multiple occasions regarding his refusal to comply with the work restrictions imposed by his physician. (*Kotlowski Dep.*, 67:21-24; *Keup Dep.*, 38:2-4; *Haller Dep.*, 17:23-24.)  On the other hand, Hanczyc has testified that he was "absolutely" ordered on numerous occasions to violate his work restrictions, (*Hanczyc Dep.*, 63:20), and that he even reported Kotlowski's disregard for his work limitations to Haller. (*Haller Dep.*, 90:14-15.)   Based on this competing evidence, there is a genuine issue as to whether Valley took adverse employment action against Hanczyc by failing to provide a reasonable accommodation for Plaintiff in the form of a reduced work schedule or whether Hanczcy caused the breakdown of the interactive process. Valley's motion and Hanczyc's cross-motion for summary

---

[3]     Hanczyc argues that he was disabled within the meaning of the ADA because he suffers from heart disease which significantly impairs his ability to work and the function of his circulatory system. (Doc. 63, 8.)  Defendants have not disputed this claim.

judgment on Counts I and III of the Complaint will therefore be denied.

### 2.    Retaliation

To establish a *prima facie* case of illegal retaliation under the ADA, "a plaintiff must show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Williams*, 380 F.3d at 759 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002)). "Unlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA." *Id*. at 759 n.2.

"The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) applies to ADA retaliation claims." *Id*. at 760 (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)). Under this scheme: (1) the plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if the defendant meets its burden of production, the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason was a pretext for discrimination. *See Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 555 (3d Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

If the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997)). However, the "employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason

actually motivated the [action].'" *Id.* at 500-01 (citing *Woodson*, 109 F.3d at 920 n.2).

If the employer satisfies its burden, to survive summary judgment in a pretext case, "the plaintiff must produce 'sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action.'" *Id.* at 504 (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996)).   "This is ordinarily done by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994)). Essentially, to avoid summary judgment on an ADA claim, the plaintiff must "'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause' of the decision." *Vierra v. Wayne Mem'l Hosp.*, 168 F. App'x 492, 495 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 763).

Valley's motion for summary judgment as to Count II, ADA retaliation, will be denied.[4] Here, Plaintiff has sufficiently satisfied its burden of production to establish a *prima facie* case of retaliation under the ADA by presenting evidence that he engaged in protected activity- requesting a reduced work schedule- which resulted in adverse employment action through the change in his compensation structure, the alleged denial of a reduced work schedule, and his subsequent termination.[5]

---

[4]    Hanczyc did not move for summary judgment with respect to his ADA retaliation claim.

[5]    While Valley "maintains that Hanczyc's dismissal was not in any way connected to his exercise of any protected activity or his claimed 'disability' status," Valley's argument in support of its motion is largely based on Plaintiff's inability to rebut

The burden thus shifts to Valley to provide a legitimate, nondiscriminatory reason for the adverse action.  Valley has satisfied its obligation by articulating valid reasons for discharging Hanczyc- performance issues and incidents with other employees-, for changing his compensation from salary to hourly- the suggestion of the Department of Labor-, and for not providing a reduced work schedule- Hanczyc's own conduct-, which constitute legitimate reasons for the adverse employment action.

Valley's motion for summary judgment must nevertheless be denied because Hanczyc has provided "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Krouse*, 126 F.3d at 504.  First, a reasonable jury could find that the compensation scheme imposed by Valley after Hanczyc returned from leave, which made him an hourly employee but did not provide payment for hours worked in excess of forty hours per week, was in retaliation for his request for a reasonable accommodation.  In addition, a jury could find Plaintiff was terminated not for performance reasons but for exercising his protected rights.  In support of his claim, Hanczyc testified that on August 10, 2009, shortly before he was terminated, he attended a meeting with Haller and Keup where he was asked about the EEOC issue and whether "it would go away." (*Hanczyc Dep.*, 111:25-112:3.)  Hanczyc testified that he was told if the got "rid of the case . . . everything would be okay." (*Id.* at 112:10-11).   Lastly, a jury could conclude that Plaintiff was not provided a reduced schedule, and the trier of fact could believe Hanczyc's testimony that Valley repeatedly disregarded his physician's prescription for a reduced work schedule.   In light of this evidence, a reasonable factfinder could rationally conclude that the adverse action suffered by Hanczyc was not for the reasons articulated by Defendants, but rather, based on the exercise of his request for a reasonable accommodation and his efforts to enforce his rights.

---

the asserted nondiscriminatory reasons for the adverse employment action.

Valley's motion for summary judgment on the ADA retaliation claim will therefore be denied.

## C.    The FMLA Claims

Among other reasons, the FMLA was passed by Congress "to entitle employees to take reasonable leave for medical reasons, . . ." because of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(1)(4), (b)(2).    The FMLA permits eligible employees to take up to "12 workweeks of leave during any 12–month period," 29 U.S.C. § 2612(a)(1), if a "serious health condition . . .  makes the employee unable to perform the functions of the position of such employee." *Id*. at § 2612(a)(1)(D).  An "eligible employee" is an employee who has been employed - - "(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

An eligible employee under the FMLA is permitted to take leave intermittently or on a reduced leave schedule when medically necessary. *See* 29 U.S.C. §  2612(b)(1).  And, the FMLA regulations provide that a "[r]educed leave schedule means a leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." 29 C.F.R. § 825.800.

In order to invoke rights under the FMLA, however, employees must provide their employer with adequate notice about the need to take leave. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, - - - F.3d - - -, 2012 WL 3140350, at *7 (3d Cir. Aug. 3, 2012) (citing 29 U.S.C. § 2612(e)(2)).  The employee "'need not expressly assert rights under the FMLA or even mention the FMLA.'" *Id*. (quoting 29 C.F.R. § 825.303(b)).  Thus, the "'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" *Id*. (quoting

*Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007)).

The FMLA contains "two relatively distinct types of provisions:" (1) entitlement or interference provisions; and (2) discrimination or retaliation provisions. *See Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Hanczyc asserts claims for both interference and retaliation under the FMLA.

### 1.  Interference

"In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Callison*, 430 F.3d at 119 (citing 29 U.S.C. §§ 2612(a), 2614(a)). The Act provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Thus:

> [t]he employee need not show that he was treated differently than others. Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision. An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.

*Callison*, 430 F.3d at 119-20. Because an FMLA interference action "is not about discrimination, a *McDonnell Douglas* burden-shifting analysis is not required." *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (citing *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 485 (D. N.J. 2002)).

Here, a genuine issue of material fact exists as to whether Valley interfered with Hanczyc's rights under the FMLA. Accordingly, Defendants' motion for summary judgment and Hanczyc's cross-motion for summary judgment as to the FMLA interference claim will be denied.[6]

---

[6]    The parties do not dispute Plaintiff's status as an eligible employee under the FMLA.

In particular, while Defendants have set forth evidence that Hanczyc was provided with all FMLA leave requested and Plaintiff unilaterally refused to comply with the reduced work schedule as prescribed by his physician, (*Kotlowski Dep.,* 67:21-23), Plaintiff has presented contradicting evidence that Valley was responsible for requiring him to work in excess of his doctor's restrictions.  Hanczyc has also presented evidence that after his surgery he was told by Lisa Natt that Valley did not offer leave under the FMLA. (*Hanczyc Dep.*, 82:19-83:24.)  Based on the foregoing, it is not clear whether Defendants refused to provide benefits to Hanczyc under the FMLA, including providing Hanczyc with a reduced work schedule, or whether Plaintiff voluntarily failed to abide by his physician's orders.  As such, a genuine issue of material fact exists and summary judgment will be denied with respect to the FMLA interference claim.

### 2.    Retaliation

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, - - - F.3d - - -, 2012 WL 3140350, at *6 (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009)).  Retaliation claims under the FMLA based on circumstantial evidence have been assessed under the *McDonnell Douglas* framework. *See id*.  As recently set forth by the Third Circuit:

> [Plaintiff] has the initial burden of establishing a *prima facie* case. To do so, she must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of her retaliation claim: (a) invocation of an FMLA right, (b) termination, and (c) causation.  If [Plaintiff] can do so, the burden of production shifts to [Defendant] to articulate some legitimate, nondiscriminatory reason for its decision.  If [Defendant] meets this minimal burden, [Plaintiff] must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [Defendant's] articulated legitimate reasons.

*Id*. (internal citations omitted).

Although Defendants question whether Plaintiff has established a *prima facie* case

of retaliation under the FMLA, their summary judgment motion focuses predominantly on Hanczyc's alleged inability to establish that Valley's articulated reason was a pretext for discrimination.  Accordingly, the Court will proceed as though Plaintiff adequately set forth a *prima facie* FMLA retaliation claim by presenting evidence of a request for a reduced schedule, denial of the request and termination of employment, and a causal link between the request and termination.

Defendants in this case have sufficiently satisfied their burden of articulating a nondiscriminatory reason for Hanczyc's termination.  In particular, Defendants have set forth evidence that Plaintiff was terminated due to customer services issues, (*Kotlowski Dep.*, 68:2-11), inadequate work performance, and issues with Valley employees. (*Hanczyc Dep.*, 87:16-19.)  These reasons are more than sufficient to satisfy Defendants' minimal burden of production.

Nevertheless, Plaintiff has pointed to evidence from which a factfinder could reasonably disbelieve Defendants' reasons for termination.   Specifically, Plaintiff has provided a declaration from John Meyer who was Director of Sales at Valley from 2005 to 2011. (*Meyer Decl.*)  According to Meyer, on several occasions during executive and ad hoc operational meetings, Hanczyc's employment and medical condition was discussed. (*Id.*) And, at one meeting, "during a discussion of Mr. Hanczyc's requests that he be allowed to limit his work hours in compliance with his doctor's recommendations, Mary Jane Saras [CEO Options] advised Keup that if she could not fire Mr. Hanczyc, she should find a way to make him quit." (*Id.*)  Furthermore, Hanczyc testified that on August 10, 2009, shortly before he was terminated, he attended a meeting with Haller and Keup where he was asked about the complaint involving his protected rights and whether "it would go away." (*Hanczyc Dep.*, 111:25-112:3.)  Mr. Hanczyc testified that he was told if he got "rid of the case . . . everything would be okay." (*Id*. at 112:10-11).   In light of this evidence, a reasonable

factfinder could conclude that Hanczyc was not terminated for the reasons articulated by Defendants, but rather for the exercise of his rights protected under the FMLA.[7] Defendants' motion for summary judgment on the FMLA retaliation claim will therefore be denied.

### D.     The FLSA Claim

The Fair Labor Standards Act provides that an employer shall not employ any employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  However, the FLSA's guarantees do not apply to all employees.  For example, individuals employed in bona fide executive, administrative, or professional capacities are exempt from the FLSA's minimum wage and maximum hour requirements. *See id*. at § 213.

That Hanczyc was not entitled to overtime payments when he was classified as an "exempt" employee is not disputed by the parties.  Instead, the parties debate the exact time that Hanczyc was reclassified from an "exempt" salaried employee to a "non-exempt" hourly employee.

According to Defendants, Hanczyc was reclassified as a "non-exempt" employee on November 17, 2008.  Keup testified that Plaintiff was a salaried employee until the visit from the Department of Labor. (*Keup Dep.*, 22:13-15.)

Conversely, Plaintiff asserts that Defendants' position is not supported by the

---

[7]     Although Defendants argue they are "entitled to summary judgment because Valley would have dismissed Hanczyc in the absence of his taking leave" pursuant to *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004), in this case there is a genuine issue of fact as to whether Hanczyc would have been discharged for reasons unrelated to ADA accommodations and FMLA leave.  That is, it is not apparent from the evidence here that Hanczyc would have been terminated absent the request for intermittent leave based on the testimony that "everything would be okay" if Plaintiff "got rid of" the EEOC complaint.

evidence of record.   Hanczyz contends that he became a "non-exempt" employee in December 2007 after he returned to work from heart surgery.   In support of his argument, Hanczyc relies on his own testimony in which he stated he worked at Valley for a little over a year before he had heart surgery and afterward he became an hourly employee. (*Hanczyc Dep.*, 34:20-22.)   Hanczyc also cites the testimony of Valley's corporate designee, Karen Haller, who was designated by Valley to testify on its behalf to the following matters: "the employment history, disciplinary history, job duties, job titles, job performance, and termination of employment of Plaintiff"; "Plaintiff's work schedule, hours worked, job duties, work expectations"; and "policies and practices regarding payment of wages, including calculation of overtime, calculation of eligibility for overtime, determination of exempt/non-exempt status." (Doc. 37.)   During the course of her deposition, Haller testified that when Hanczyc returned from his medical leave he was paid hourly. (*Haller Dep.*, 31:14:17).   Haller was specifically asked: "after his surgery, when he became an hourly employee, you testified that Valley paid him his hourly rate up to the 40th hour, but then did not pay him for any hours worked over 40; is that correct?" (*Id*. at 31:24-32:4.)   Haller responded "correct." (*Id*. at 32:5.)   In addition to his own testimony and Haller's testimony, Hanczyc asserts that it is clearly established that he was not paid for hours worked over forty because his payment advices and timecards demonstrate that any week he worked over forty hours, he was paid the same regardless of how many hours he worked, but for weeks he worked under forty hours, he was compensated at an hourly rate. (Docs. 48; 50; 51).   For example, Plaintiff worked forty-two and three quarters hours in the last week of February 2008 and was paid $807.69. (*Id*.)   Hanczyc was paid the same $807.69 when he worked fifty hours in the last week of March 2008. (*Id*.)   In comparison, a week in February 2008 where Hanczyc worked only thirty-two hours he was paid $646.15. (*Id*.)   And, in a week in July of 2008 where he worked thirty-eight and three quarters hours, Hanczyc was paid $782.45.

(*Id.*)

In response to Plaintiff's summary judgment motion, Defendants argue that Haller did not in fact testify that Valley failed to compensate Hanczyc for hours worked in excess of forty.   According to Defendants, Plaintiff's counsel asked if he "would not get any overtime pay for hours worked over 40," to which Haller responded "correct." (*Haller Dep.*, 26:6-8.)  Defendants assert that the question was objected to based on the form of the question due to a lack of clarity.  Yet, Plaintiff's counsel failed to clarify the question. (Doc. 66, 10.)

Here, despite Defendants' representations to the contrary, there is no issue of fact as to Hanczyc's status as a "non-exempt" employee once he returned from heart surgery in December 2007.  Ms. Haller, Valley's corporate designee, testified that Plaintiff was paid a salary before he went on leave for heart surgery, but after he returned, he was paid hourly. (*Haller Dep.*, 31:14-17.)   Valley's corporate designee also testified that when Hanczyc became an hourly employee, he was not paid for hours worked over forty. (*Id.* at 32:1-5.) Defendants did not object to these questions based on a lack of clarity. (*Id.*) Similarly, Kotlowski testified that when Hanczyc was no longer a salaried employee, he was required to punch a time card. (*Kotlowski Dep.*, 33:12-15.) And, a review of Hanczyc's timecards and payment advices demonstrate that he was compensated at an hourly rate for weeks where he worked less than forty hours, but for weeks where he worked over forty hours, he was compensated at a fixed sum, regardless of the number of hours worked.[8]

---

[8]     It is apparent why such a scheme is impermissible- it insulates employers from providing overtime compensation to employees that work in excess of forty hours, while, at the same time, ensuring that employers will compensate employees only for hours actually worked in weeks where employees work less than forty hours. That is, under this scheme, if an employee worked thirty hours, he or she would be paid thirty hours of wages.  But, if the employee worked forty-five hours, he or she would only be paid for forty hours of work.  Such a compensation structure directly contradicts the mandate and purpose of the FLSA.  Although Defendants

Indeed, if Plaintiff was truly an "exempt" employee as Defendants assert, then Hanczyc should have been compensated at the same rate each week regardless of the number of hours he worked.  The fact that his pay fluctuated by the week directly contradicts and undermines Defendants' position that Plaintiff was an "exempt" employee between December 2007 and November 2008.  Thus, as Defendants failed to compensate Hanczyc not less than one and one-half times the regular rate of pay for all hours worked over forty in a workweek between December 2007 and November 2008, Hanczyc is entitled to summary judgment as to liability on his FLSA claim.

While Hanczyc has established that he was not compensated for hours worked in excess of forty between December 2007 and November 2008, there remains a triable issue of fact as to what Plaintiff's proper hourly wage was during this time period.  *See, e.g., Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *8 (D. N.J. Jan. 12, 2012) (granting summary judgment to Plaintiff on FLSA liability but not damages); *McElroy v. Klein*, No. 05-5437, 2007 WL 2388350, at *1 (S.D.N.Y. Aug. 21, 2007) (granting plaintiff's motion for summary judgment as to liability on FLSA claim "but the issues of damages is reserved for trial"); *Reyna v. CongAgra Foods, Inc.*, No. 04-39, 2006 WL 3667231, at *1 (M.D. Ga. Dec. 11, 2006) (granting plaintiff's partial motion for summary judgment as to liability only and "the amount of damages must be proven at trial").[9]  Accordingly, the issue

---

assert that Plaintiff was overpaid $7,834 during this time (due to an alleged miscalculation of his hourly wage), even if true, this does not contradict the clear evidence that Plaintiff was not compensated when he worked over forty hours.  As Defendants have not pointed to any authority which would find such a compensation scheme lawful, Plaintiff's motion for summary judgment on liability as to the FLSA claim will be granted.

[9]     Plaintiff presents evidence through his payment advices and timecards that his wage was $20.19 per hour, (Docs. 48-51), while Defendants have provided testimony that Hanczyc's base hourly wage was about $15.00 per hour when he was changed from a salaried to an hourly employee. (*Haller Dep.*, 45:12-47:21.)

of damages will be determined at the time of trial.

## E.      The PMWA Claim

In addition to Hanczyc's claim that Defendants' failure to compensate him for hours worked in excess of forty violated the FLSA, he also asserts that Defendants violated the Pennsylvania Minimum Wage Act. *See* 43 Pa. Stat. Ann. §§ 333.101, *et seq*.  The overtime provisions of the PMWA offer employees similar protections to what they enjoy under the FLSA.  The PMWA provides:

> Employees shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the secretary: . . . provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

43 Pa. Stat. Ann. § 333.104(c).

For the reasons discussed with respect to Hanczyc's FLSA claim, his motion for summary judgment as to liability on the PMWA claim will be granted.  The evidence establishes that upon Hanczyc's return from heart surgery, he was compensated as an hourly employee when he worked less than forty hours.  Yet, when he worked more than forty hours, Hanczyc received $807.69 regardless of how many hours he worked.  As such, Valley violated the PMWA by failing to pay Plaintiff for hours he worked in excess of forty between December 2007 and November 2008.  Plaintiff's motion for summary judgment as to liability on the PMWA claim will therefore be granted.  However, as a dispute of fact exists as to Plaintiff's hourly wage for the time period he was not compensated for hours worked in excess of forty, Hanczyc will be required to establish his damages at the time of trial.

## III. Conclusion

For the above stated reasons, Defendants' motion for summary judgment will be denied, and Plaintiff's motion for partial summary judgment will be granted in part and denied in part.

An appropriate order follows.


September 7, 2012                          /s/ A. Richard Caputo
Date                                      A. Richard Caputo
                                          United States District Judge